IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARNELL DOLLISON,<br><br>Defendant. | Case No. 3:09-cr-00106-SLG-DMS<br><br>**FINAL ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 AND MOTION FOR LEAVE TO CONDUCT FORMAL DISCOVERY PURSUANT TO HABEAS RULE 6 (DOC. 91)** |

**I.     Motion Presented**

On January 19, 2010, Defendant Darnell Dollison (Dollison) pleaded guilty to two counts of knowingly and intentionally selling cocaine to a confidential informant (CI). (Docs. 17 at 3-7; 19). In a signed plea agreement, Dollison agreed to waive his right to appeal or collaterally attack his conviction, with the exception of collateral attacks challenging the effectiveness of his counsel and the voluntariness of his guilty plea. (Doc. 17 at 14-15). After accepting his plea, (Doc. 19), U.S. District Court Judge John W. Sedwick sentenced Dollison to twenty-seven months of imprisonment followed by three years of supervised release. (Docs. 29; 30).

Dollison seeks leave to conduct discovery pursuant to Rule 6 of the Rules Governing Section 2255 proceedings within the framework of a § 2255 motion to vacate or set aside his conviction.[1]  Dollison claims that his decision to plead guilty

---

[1] Although Dollison has filed his motion under the title "Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 and Motion for Leave to Conduct Formal Discovery Pursuant to Habeas Rule 6," § 2255 does not permit federal prisoners to bring petitions for habeas relief. Instead,

may have been involuntary in light of newly discovered evidence suggesting that Stephen Palmer (Palmer), a forensic lab analyst employed by the state crime laboratory at the time the cocaine in this case was tested, may have tainted the evidence underlying his conviction. (Doc. 91 at 10-11).

Dollison does not claim that he is presently entitled to relief pursuant to § 2255. (*See* Doc. 91 at 9-10). Instead, he argues that he has demonstrated good cause to obtain discovery regarding the state's investigation of Palmer's misconduct. (*Id.* at 4-14). In support of the instant motion, Dollison has filed several newspaper articles reporting that Palmer stole and consumed drugs, which had been seized in criminal investigations. (Docs. 91-3; 91-4; 91-5; 91-6; 91-7; 91-8; 91-9). The drugs were taken from the Alaska state crime laboratory between 2004 and 2011, and some of the laboratory's drug reference samples were adulterated, according to the news stories. (*Id.*).

The government opposes Dollison's motion, contending that his motion to vacate is time barred pursuant to the statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and that he has

---

Section 2255 permits federal prisoners to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a); SECT 2255 Rule 2 ("The application must be in the form of a motion to vacate, set aside, or correct the sentence."). While the introductory paragraph of his motion requests that the Court vacate or set aside his conviction, the only relief sought in the petition is the detailed request for discovery. (*Compare* Doc. 91 at 1 *with* Doc. 91 at 11-12). As a result, the Court will refer to the matter as "the motion," and treat it as a motion for discovery at this stage of the proceedings.

failed to establish good cause for Rule 6 discovery because there is no reason to believe Palmer's misconduct tainted Dollison's guilty plea. (Doc. 103).

In his reply brief, Dollison counters that his motion was timely because AEDPA's statute of limitations was tolled pursuant to 28 U.S.C. § 2255(f)(4) until Palmer's misconduct became public in 2014. (Doc. 108 at 6-8). He also asserts that he is eligible for equitable tolling because the alleged governmental misconduct in his case amounts to extraordinary circumstances. (*Id*. at 8-9).

The parties have fully briefed the issues, and the Court finds that further argument is unnecessary. The matter is now ripe for resolution.

## II.  FACTUAL BACKGROUND

### A. Dollison's Conviction

On October 23, 2009, the grand jury indicted Dollison on two counts of knowingly and intentionally distributing a mixture containing a detectable amount of cocaine on March 19, 2009 and April 8, 2009. On November 25, 2009, Dollison filed through counsel a Motion to Vacate Trial Date on shortened time, asserting that "he [was] not interested in proceeding to trial" and requesting that the District Court set a change of plea hearing for "January 5, 2010 or at a later date convenient to the court." (Doc. 11 at 1).

On January 19, 2010, the government filed a plea agreement signed by Dollison, his attorney and the U.S. Attorney for the District of Alaska. (Doc. 17). Under the terms of the plea agreement, Dollison agreed to plead guilty to the indictment as charged, and stipulated that he sold 3.6 grams of cocaine to a

confidential informant (CI) on March 19, 2010, and a bag containing 14.2 grams of a mixture containing 1.7 grams of cocaine on April 8, 2009. (Doc. 17 at 4-7). As noted, Dollison also agreed to waive his appeal and collateral attack rights with two exceptions, reserving his right to claim that he entered his guilty plea involuntary or as a result of ineffective assistance of counsel. (*Id.* at 14-15).

District Court Judge John W. Sedwick accepted the parties' agreement and Dollison's guilty plea on January 19, 2010. (*See* Doc. 19). At the change of plea hearing, Dollison testified, under oath, that he understood and had signed the plea agreement, including his waiver of his right to appeal and collaterally attack his conviction:

> COURT: Did you read [the plea agreement]?
> DOLLISON: Yes I did sir.
> COURT: Did you discuss it with Ms. Geddes?
> DOLLISON: Yes I did sir.
> COURT: Did you sign it?
> DOLLISON: Yes I did judge.
> […]
> COURT: Do you realize that by waiving your right to appeal and to collaterally attack your conviction and sentence you are giving up important rights?
> DOLLISON: Yes I do sir.
> COURT: You understanding by making these waivers you are accepting any sentence the court may impose provided it's consistent with your plea agreement?
> DOLLISON: Yes sir.

(Audio Recording of 01/19/2010 Change of Plea Hearing, at 09:05:40-09:06:53).

*U.S. v. Dollison*
3:09-cr-00106-SLG-DMS
Order Regarding Defendant's Amended Petition and Motion for Discovery
Page 4 of 20

On April 20, 2010, Judge Sedwick sentenced Dollison to twenty-seven months of prison to be followed by three years of supervised release. (Docs. 29; 30).

**B. Stephen Palmer's Misconduct Reported Publicly**

On January 15, 2014, the Alaska Dispatch News (ADN) reported that the staff of Alaska's Scientific Crime Detection Laboratory (the "crime lab") "discovered problems with the lab's control samples of six illegal drugs: morphine, oxycodone, hydrocodone, opium, codeine, and amphetamine." (Doc. 91-3 at 1).

The control samples for these drugs had been found to have been adulterated with foreign substances, however a state official would not say whether "a lab employee or anyone else stole drugs from the control samples and replaced them with something to cover up the theft." (*Id.*). The crime lab's manager, Orin Dym, stated that the reference samples were predominately used to train chemists to analyze drugs. (*Id.*). Dym explained that the crime lab "pretty much exclusively" uses archived test results, known as libraries, to tests drugs brought in the lab. (*Id.*).

Similarly, as reported in a January 15, 2014 article published by KTUU Channel 2 News, John Skidmore, the chief of the Alaska Department of Law's Criminal Division said that the validity of past lab tests had not been called into question and that the reference standards were not critical to the lab's operation. (Doc. 91-4 at 2). Skidmore stated that a criminal investigation was being conducted

to determine how foreign matter was introduced into the control samples. (Doc 91-3 at 3). There was no mention of compromised samples of cocaine.

On March 6, 2014, the ADN reported that Palmer had been charged with six felonies stemming from a seven-month investigation into the adulteration of the crime lab's reference samples. (Doc. 91-5). Among other allegations, he was charged with adding adulterants to the state crime lab's reference samples to cover up the theft of portions of the samples, while working as a forensic analyst at the lab between January 1, 2004 and November 1, 2011. (*Id*. at 1, 3).

According to the article, Investigator Gordon Bittner identified Palmer as a suspect who had access to the reference samples and the forensic background needed to adulterate the standards. (*Id*. at 2). Further investigation revealed that when Palmer resigned in 2011 for no apparent reason, a tote containing methadone, oxycodone, promethazine, diazepam and diphenhydramine seized in two criminal cases was missing after Palmer had checked the evidence out.  (*Id*.). In another incident, tablets of suspected methadone handled by Palmer were found to have been replaced by over-the-counter cold medicine. (*Id*.).

Police interviewed Palmer's son, Craig Palmer, who reported that he learned on January 2, 2012, that his father was addicted to heroin. (*Id*.). "Palmer allegedly told his son that he never had to pay for his drugs, and never went more than 12 hours without 'hitting up[.]'" (*Id*.). In a seven-page letter dated January 17, 2012, Palmer told his son that he took "'various opiates, methamphetamine, heroin, Xanax, MDMA and ketamine." (*Id*.). He further admitted that from 2005 until 2011

he was taking methamphetamine and heroin on a daily basis. (*Id.* at 3). The letter was given to the police by Palmer's son. (*Id.* at 2).

In a January 23, 2015, article, the ADN reported that Palmer pleaded guilty to five charges, including tampering with physical evidence and official misconduct. (Doc. 91-9). As part of his plea agreement, Palmer agreed to answer all questions truthfully in post-conviction relief cases concerning his forensic work. (*Id.* at 2).

In a phone interview with the ADN, Skidmore stated that the Department of Law had responded to inquiries from defense attorneys with information about how Palmer's adulteration of the reference samples might have affected their cases. (*Id.*). Skidmore stated that inquiries from the defense bar had "stopped months ago," and that he believes that "defense attorneys realized Palmer's alterations to the standards would not make a difference in the prosecution of cases." (*Id.* at 1-2). The record is silent regarding whether Dollison's counsel made direct inquiries of the Department of Law before filing this motion.

## C. Dollison's § 2255 Motion

On February 2, 2015, Dollison filed his *pro se* Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. 75). Dollison claimed that he is entitled to relief because the prosecution failed to disclose evidence that "on or about March 2013 a state crime lab employee was arrested … [for] stealing drugs and replacing drugs at the state crime lab until he retired in December 2011." (Doc. 75 at 4). Dollison also claimed that his attorney was ineffective for failing to inform

*U.S. v. Dollison*
3:09-cr-00106-SLG-DMS
Order Regarding Defendant's Amended Petition and Motion for Discovery
Page 7 of 20

him that there were issues in the state crime lab, which, he contended, rendered his guilty plea involuntary. (Doc. 75 at 5).

Dollison further stated that he did not file an appeal because he "did not have any reason until the newly discovered evidence in the case in 2013." (*Id.*). Later in his motion, he represented that "this information was not presented to the defendant until March 2014." (Doc. 75).

The District Court reappointed the Federal Public Defender to represent Dollison. (Doc. 81). Dollison then filed, through counsel, an amended § 2255 motion to vacate, entitled: Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 and Motion for Leave to Conduct Formal Discovery Pursuant to Habeas Rule 6.[2] (Doc. 91).

In his amended motion, Dollison represents that he agreed to sell a CI seven grams of cocaine for $400, but ultimately gave the CI 3.6 grams of a white powdery substance during the first controlled buy. (Doc. 91 at 5). He concedes that the white substance field tested positive for cocaine, and that the state crime lab positively identified the substance as cocaine. (*Id.*). He, however proffers, that the crime lab reported the substance to weigh 3.4 grams. (*Id.*).

Dollison also asserts that he gave a powder, which he claimed to be 14.2 grams of cocaine, to the CI in exchange for $750 in a second controlled buy. (*Id.*). He

---

[2] Along with the instant motion, Dollison also filed a motion to join the State of Alaska as a party pursuant to Federal Rule of Civil Procedure 19(a)(1)(A). (Doc. 92). This Court denied Dollison's motion for joinder as meritless. (Doc. 95).

*U.S. v. Dollison*
3:09-cr-00106-SLG-DMS
Order Regarding Defendant's Amended Petition and Motion for Discovery
Page 8 of 20

states that, according to a lab report, the state crime lab only identified 1.7 grams of the powder as cocaine, and the rest as an unidentified white substance. (Doc. 91 at 5). Dollison proffers that Stephen Palmer reviewed this lab report for "technical accuracy." (*Id.*). The record before the Court does not reveal whether the second sample was field tested for the presence of cocaine. (*See* Doc. 91 at 5).

On the basis of these representations and the series of news articles summarized by the Court in Section II(B), *supra*, Dollison argues that he has established good cause for discovery regarding the State's investigation of Palmer's misconduct at the state crime lab. (Doc. 91 at 9-11). Relying on the First Circuit's decision in *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006), Dollison asserts that his guilty plea was involuntary if Palmer's misconduct affected his decision to plead guilty, and that discovery is warranted to develop this claim. (*Id.* at 9-10).

He argues that there is a strong likelihood that he would not have pleaded guilty had he been aware of Palmer's misconduct because: (1) the government would have called Palmer as a witness at trial, with devastating results to its case; and (2) Palmer may have tampered with the evidence in this case. (*Id.* at 9-11). To prove these claims, Dollison requests that the Court order that:

(1) Orin Dym, the manager of the State's crime lab, answer the interrogatory filed at Doc. 91-2;
(2) Orin Dym provide any bench notes created during the analysis of the cocaine in this case;
(3) The Attorney General of Alaska provide the Court all documents pertaining to the State's investigation of Palmer's misconduct for *in camera* review; and
(4) The government provide the discovery required in civil cases under Federal Rule of Civil Procedure 26(a)(1)(A).

(Doc. 91 at 11-12).

In its opposition, the government counters that: (1) Dollison's motion is time barred; (2) Dollison waived his right to collaterally attack his conviction; (3) the motion is an improper substitute for direct appeal; (4) Dollison's plea was voluntary; and (5) Dollison is not entitled to discovery to develop his claims. (Doc. 103 at 7-21).

In arguing that Dollison's plea was voluntary and that discovery is inappropriate, the government represents that the cocaine in the first transaction was tested by Brandi Barnett, whose report was reviewed for technical accuracy by Jack Hurd, while the cocaine in the second transaction was analyzed by John Giacalone and reviewed for accuracy by Stephen Palmer. (*Id*. at 2). Because Palmer merely reviewed Giacalone's report, the government argues that any failure to disclose Palmer's then unknown misconduct is not attributable to the government and does not cast doubt on the voluntariness of Dollison's plea. (*Id*. at 13-14). That is, the government argues that there is no reason to believe that Palmer's misconduct could have materially affected Dollison's decision to plead guilty because: (1) there is no reason believe Palmer stole cocaine from the crime lab; and (2) Palmer did not personally test the drugs in Dollison's case and would not have been called as a witness at trial. (*Id*. at 15-18).

Replying to these contentions, Dollison asserts that he is entitled to statutory and equitable tolling of AEDPA's statute of limitations. (Doc. 108 at 6-9). He also asserted a new theory of the case, claiming that the facts proffered, if developed and proven true, would demonstrate that the government's failure to disclose Palmer's

misconduct violated its duty under *Brady v. Maryland*, 373 U.S. 83 (1963) to discover all material exculpatory evidence to the defense (*Id.* at 3-6). Citing to the Ninth Circuit's decision in *Sanchez v. United States*, 50 F.3d 1448, 1453–54 (9th Cir. 1995), Dollison argues that there is a reasonable probability that he would not have pleaded guilty but for this alleged *Brady* violation.

### III.   ANALYSIS

#### A. Dollison's Motion to Vacate Is Timely

Under AEDPA, the defendant generally has one year from the date on which his judgment became final to file a § 2255 motion to vacate. 28 U.S.C. § 2255(f)(1). However, when a defendant moves to vacate his sentence on the basis of newly discovered evidence, AEDPA's statute of limitations begins on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). "Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (internal quotation marks and citation omitted). It is the defendant's burden to prove that the statute of limitations was tolled. *Banjo v. Ayers*, 614 F.3d 964, 967 (9th Cir. 2010).

Dollison's *pro se* petition was filed on February 2, 2015. (*See* Doc. 75 at 1). On the basis of Dollison's *pro se* statement that he "did not have any reason [to file] until the newly discovered evidence in the case in 2013," (Doc. 75 at 4), the government argues that Dollison knew or could have known about Palmer's

misconduct "as early as 2013" and that the statute-of-limitations expired sometime in 2014. (Doc. 103 at 8).

However, Dollison stated that the information concerning Palmer's misconduct at the crime lab "was not presented to [him] until March 2014." (Doc. 75 at 10). His statement is corroborated by the fact that the first news article about the Palmer investigation appeared on March 6, 2014. (*See* Doc. 91-5). Although articles reporting irregularities in the state crime lab's reference samples were published in January 2014, (Docs. 91-3; 91-4), the Court concludes from the existing record that the operative facts underlying Dollison's § 2255 claim—Palmer's theft of and adulteration of the evidence and reference samples in the state crime lab—could not have been discovered through reasonable diligence until the ADN reported the charges against Palmer on March 6, 2014, (*see* Doc. 91-5).

Accordingly, the Court concludes that AEDPA's one-year statute of limitations began to run on March 6, 2014, pursuant to 28 U.S.C. § 2255(F)(4). As a result, Dollison's initial *pro se* § 2255 motion to vacate, filed on February 2, 2015, was timely. Because Dollison's *pro se* motion relies on the same common core of operative facts as the amended motion, the Court concludes that Dollison's amended motion to vacate was timely filed.[3] *Cf. Mayle v. Felix*, 545 U.S. 644, 650 (2005) ("An amended habeas petition, we hold, does not relate back (and thereby

---

[3] As the motion to vacate is timely under the statutory language of § 2255, the Court has no occasion to consider whether extraordinary circumstances exist to support Dollison's equitable tolling argument.

*U.S. v. Dollison*
3:09-cr-00106-SLG-DMS
Order Regarding Defendant's Amended Petition and Motion for Discovery
Page 12 of 20

escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."); *see also United States v. Marulanda*, 226 F. App'x 709, 711 (9th Cir. 2007) (applying *Mayle v. Felix* to conclude that a federal prisoner's amended § 2255 motion was untimely because it did not relate back to his original, timely filed § 2255 motion).

## B. Dollison's Motion Was Properly Brought as a § 2255 Motion

The government also argues that Dollison's motion should have been brought as a direct appeal and that a § 2255 motion cannot be used as a substitute for direct appeal. (Doc. 103 at 11-12). However, as the government acknowledges, (*Id.* at 12), Dollison has claimed that his plea was involuntary because the government violated Due Process by failing to discover material exculpatory evidence concerning Palmer's misconduct.

Because it is well-established that constitutional claims premised on newly discovered evidence can be brought under 28 U.S.C. § 2255, *see, e.g.*, *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010), the government's argument is without merit.

## C. Dollison Did Not Waive His Right to Challenge the Voluntariness of his Plea

Likewise, the government's argument that Dollison waived his right to file the instant § 2255 motion pursuant to the plea agreement in this case is meritless. The plea agreement clearly states that Dollison is permitted to file collateral

attacks challenging the voluntariness of his guilty plea. (Doc. 17 at 14-15). Indeed, under Ninth Circuit case law, a defendant cannot waive claims that his plea was involuntary. *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) ("[A] plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an [ineffective assistance of counsel] claim that challenges the voluntariness of the waiver."); *Heredia-Nieblas v. United States*, No. CR-15-00522-PHX-SRB, 2017 WL 3172811, at *2 (D. Ariz. May 16, 2017), *report and recommendation adopted*, No. CR-15-00522-PHX-SRB, 2017 WL 3149933 (D. Ariz. July 25, 2017) ("The only claims that cannot be waived are claims that the plea or waiver itself was involuntary and ineffective assistance of counsel rendered the plea or waiver involuntary.").

### D. Dollison Has Established Good Cause for Discovery

Although brought as both a motion to vacate and a motion for discovery, Dollison's amended motion to vacate seeks a single remedy: that he should be granted leave to conduct discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings. (Doc. 91 at 9-11). Pursuant to Section 2255 Rule 6, the District Court can, for good cause, authorize a party to conduct discovery "under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."

Federal courts are not permitted to authorize discovery "for fishing expeditions to investigate mere speculation." *See Calderon v. U.S. Dist. Court for the N. Dist. of California*, 98 F.3d 1102, 1106 (9th Cir. 1996). Good cause under rule

6 exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]" *Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)) (internal quotation marks omitted); *see also United States v. Finkel*, 165 F. App'x 531, 532 (9th Cir. 2006) (applying *Bracy* in the context of a federal prisoner's § 2255 motion). Conclusory allegations are insufficient to establish good cause for discovery under Rule 6. *Calderon*, 98 F.3d at 1106 (citing *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir.1994)).

In *Ferrara v. United States*, the First Circuit held that a defendant's guilty plea is involuntary and unintelligent if: (1) egregious government misconduct predates the plea; and (2) the misconduct materially affected the defendant's decision to plead guilty. 456 F.3d 278, 290 (1st Cir. 2006). Under *Ferrara*, the petitioner must demonstrate not only impermissible conduct, but also "a reasonable probability that, but for [the] misconduct, he would not have pleaded guilty and would have insisted on going to trial."[4] *Id.* at 2974.

Relying on *Ferrara*, Dollison argues that he is entitled to discovery concerning the state's investigation of Palmer's misconduct at the drug lab. (Doc. 91

---

[4] There is no Ninth Circuit case law mirroring the holding in *Ferrara*, and some district courts outside the First Circuit have questioned the validity of *Ferrara. See, e.g., Hasbajrami v. United States*, No. 11-CR-623, 2014 WL 4954596, at *3 (E.D.N.Y. Oct. 2, 2014). The Ninth Circuit has held that a defendant "can argue that his guilty plea was not voluntary and intelligent because it was made in the absence of withheld *Brady* material." *See Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (finding that no *Brady* violation occurred).

at 9-11). He claims that, if the facts are fully developed, there is a reasonable probability that he can demonstrate that he would not have pleaded guilty, and would have insisted on going to trial, had he known of Palmer's misconduct. (*Id*. at 10).

Dollison argues that the government would have called Palmer as a witness at trial, and, if Palmer's misconduct was known, "the government's case against Dollison would have most certainly been a disaster." (*Id*.). Citing to the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), Dollison claims that he had a right to confront and cross-examine Palmer at trial.

In *Melendez-Diaz*, the Supreme Court held that the Sixth Amendment's Confrontation Clause guaranteed the defendant the right to confront and cross-examine the author of three sworn "certificate[s] of analysis" reporting that forensic tests had positively identified the evidence seized as cocaine. 557 U.S. at 308, 311. Under *Melendez-Diaz*, the government would have been obligated to call Brandi Barnett and John Giacalone, the analysts who authored the forensic reports in this case, and not Palmer or Jack Hurd, the lab personnel who reviewed Barnett's and Giacalone's reports for technical accuracy.[5] Indeed, the government would have

---

[5] After Dollison's conviction, the Supreme Court held in *Bullcoming v. New Mexico* that the Confrontation Clause requires the prosecution to present the results of forensic testing through the in-court testimony of the analyst who actually performed or observed the test. *Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011) ("We hold that surrogate testimony of that order does not meet the constitutional requirement. The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.").

likely called Barnett and Giacalone even if they were not obligated to do so under *Melendez-Diaz*, as the testimony of witnesses with direct knowledge is generally more persuasive than hearsay witnesses testifying under the business records exception.

However, if Dollison had been informed of Palmer's misconduct, he may have chosen to go to trial and call Palmer as a defense witness. Palmer's testimony would have been damaging to the government's case if he had, in fact, actually tampered with the evidence or test results, or if an adulterated reference sample for cocaine were used to test the drugs in this case.

According to the articles attached to Dollison's motion, Alaska's Department of Law has consistently represented that the adulteration of the reference samples did not taint test results. (*See* Docs. 91-3; 91-5). According to the lab's manager, Orin Dym, the reference samples were used to train new analysts, while the lab "pretty much exclusively" used prior test results, known as libraries, to conduct forensic drug testing. (Doc. 91-3 at 1).

The Court is troubled to be asked by the government to assume as fact imprecise comments quoted in the newspaper. For example, the phrase "pretty much exclusively" may mean no cocaine reference samples were used when testing the cocaine samples in Dollison's case, but that cannot be stated conclusively.

---

If Dollison were granted a new trial today, the government would be obligated to call Barnett and Giacalone as witnesses at trial under *Bullcoming*.

In the instant case, the record is silent regarding what access Palmer had to the drugs seized in this case. It is also silent regarding why the substance exchanged in the second controlled buy weighed 14.2 grams, but was tested to only have 1.7 grams of cocaine within it. The record does not reveal whether the second bag of cocaine was tested.

The defense has articulated good cause for further discovery, questioning whether the controlled substances or reference samples used in the Dollison case were "consumed, altered or destroyed in any way" by Palmer. (Doc. 91 at 10). As a result, out of an abundance of caution, this Court will grant the request for discovery in part.

Pursuant to Rule 6, the Court will permit Dollison limited discovery, and allow him to serve a subpoena pursuant to Federal Rule of Civil Procedure 45, commanding Orin Dym, manager of the state's crime lab, to answer the questions contained in Dollison's proposed interrogatory at a deposition by written questions,[6]

---

[6] Because Dym is not a party to this case, he is not subject to requests for interrogatories under Federal Rule of Civil Procedure Rule 33, *Fruits v. Shasta Cty. Sheriff*, No. 216CV1204MCEKJNP, 2017 WL 2654902, at *3 (E.D. Cal. June 20, 2017); *Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1339 (10th Cir. 1996). Accordingly, Dollison must serve Dym with a Rule 45 subpoena compelling him to submit to a deposition by written questions pursuant to Federal Rule of Civil Procedure 31.

Depositions by written questions under Rule 31 are not equivalent to Rule 33 interrogatories. As one district court has explained:

> [I]t is clear that depositions by written questions "entail more than mailing questions to the deponents and awaiting their written response." *Dasenbrook v. Enenmoh*, 2015 WL 1889069, *2 (E.D. Cal. April 24, 2015).
>
> Rule 31 requires the party taking the deposition to deliver the written questions to a deposition officer. Fed.R.Civ.P. 31(b). The deposition then proceeds in a manner

and to provide Dollison with the bench notes of any laboratory analysis performed in connection with Dollison's federal prosecution, FBI File No. 92D-AN-14412.

This information should be sufficient to determine whether Palmer's misconduct tainted or altered the test results in Dollison's case in any way. The defendant has failed to provide good cause for the additional discovery requested—the results of the Palmer investigation (for *in camera* review) and the results of any internal audits conducted in response to the criminal investigation. To order the release of this information based on the record before the Court would merely authorize a fishing expedition.

Having determined that there is good cause for limited discover pursuant to Section 2255 Rule 6, *cf. Bracy v. Gramley*, 520 U.S. 899, 908 (1997), it is unnecessary to determine if Dollison is entitled to discovery to explore the alleged pre-plea violation of *Brady v. Maryland*, 373 U.S. 83 (1963). It is also premature to determine if a *Brady* violation occurred.

---

similar to oral depositions. *Id.* (incorporating Rule 30(c), (e), and (f)). The deponent is put under oath, and then the deposition officer "must ask the deponent [the written] questions and record the answers verbatim." Fed.R.Civ.P. 30(c)(3). Following the deposition, a transcript is prepared in the same manner as an oral deposition. Fed.R.Civ.P. 31(b)(2)-(3).

*Dallas Buyers Club, LLC v. Doe-70.181.229.254*, No. 16CV317-BAS (DHB), 2016 WL 3854547, at *1 (S.D. Cal. July 15, 2016).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Dollison's Motion for Leave to Conduct Formal Discovery in part, and denies it in part. (Doc. 91).

DATED at Anchorage, Alaska this 4th day of September, 2017.

/s/ DEBORAH M. SMITH
Chief U.S. Magistrate Judge